## Case No. 146.

### ALBREE et al. v. JOHNSON.

[1 Flip. 341;[1] 6 Chi. Leg. News, 296.]

Circuit Court, N. D. Ohio. April Term, 1874.

HUSBAND AND WIFE — ACTION AGAINST WIFE — JUDGMENT BY DEFAULT — VACATION — CORRECTION BY WRIT OF ERROR CORAM NOBIS.

1. Defendant moved to set aside judgment taken on a promissory note, on the ground that the maker of the note was at the beginning of the suit a married woman: Held, that the fact of coverture at the commencement of the suit and entry of judgment are questions of fact, and that a writ of error coram nobis will lie.

2. That on motion and affidavits the same may be reversed and set aside at any time during the coverture and before the satisfaction of the judgment.

3. Coram nobis in cases of coverture to set aside irregular judgments against married women—motion in place of the writ less expensive, and the more modern practice. The appropriate use of the writ of error coram nobis is to enable a court to correct its own errors.

4. To give jurisdiction against a married woman in a suit at law, her liability must appear in the proceedings affirmatively, and will not be inferred.

5. In equity her separate property may be reached, and she may be charged, but at law she cannot confess judgment, and judgment by default may be set aside.

[At law. Action of assumpsit by George Albree and another against Maria E. Johnson. Motion by defendant to stay execution

[1][Reported by William Searcy Flippin, Esq., and here reprinted by permission.]

and set aside judgment, with application for writ of error coram nobis. Motion granted.]

WELKER, District Judge. This was an action of assumpsit commenced by the plaintiffs against the defendant. on the 16th day of September, A. D. 1868, upon a certain promissory note. The declaration alleges "that whereas the said Maria E. Johnson, wife of one W. S. Johnson, by the said W. S. Johnson, her agent, for that purpose duly authorized, on the 7th day of October, 1867, at Pittsburgh, Pa., made her promissory note in writing, and delivered the same to the said George Albree & Son, and thereby promised to pay to the order of the said George Albree & Son, the sum of $776.56 one day after the date thereof," and alleging promise to pay, and that it was not paid. At the September term, 1868, of this court, judgment was rendered on default against the defendant for the sum of $826.35, and costs of suit. Execution was issued on the judgment on the —— day of ——, A. D. 1874, and placed in the hands of the marshal for service. On the 25th day of October, 1874, William S. Johnson and the above-named Maria E. Johnson filed a motion in this court for a stay of execution and to set aside the judgment, and for grounds of their motion allege and state that when the said action was commenced against the said Maria E. Johnson, and at the time when judgment was so rendered against her, she was, and ever since has been and still is, the lawful wife of the said William S. Johnson; and that the said Maria E. Johnson, so being a married woman at the time of the commencement of the action and rendition of. judgment, the judgment so rendered against her was without authority of law, and was and is irregular, unauthorized and void. The motion is supported by affidavits showing that the defendant, at the time this suit was commenced, and judgment rendered, was and now is a married woman, the wife of William S. Johnson, who joins her in this motion. The said Maria E. Johnson, with her husband, also at the same time presents an application for the allowance of a writ of error coram nobis, and assigns for error in fact, that she was a married woman at the time of the commencement of this suit and rendition of judgment, and asks, if said motion be overruled, that a writ of error be allowed on her application, and the reversal of the judgment for the reasons aforesaid by this court.

The first question that arises in the consideration of this motion and application, is: Did the coverture of the defendant, Maria E. Johnson, at the time this was commenced and judgment rendered, constitute an error in fact, so as to entitle her to a writ of error coram nobis to reverse the judgment rendered by default? Generally errors in fact are such as affect the judgment and do not appear upon the record.

The record in this case nowhere shows that the defendant was a married woman at the time suit was commenced and judgment rendered. It is a fact brought to the notice of the court in this motion by affidavits. The declaration does state that at the time she executed the note sued upon, she was the wife of one W. S. Johnson. The note is dated the 23d of October, 1867, nearly a year before the commencement of suit. The judgment is a personal one against her as though she were a femme sole. It is laid down in many authorities, that among the errors in fact for which error coram nobis lies, are: 1st—The death of one of the parties at the commencement of the suit; the appearance of an infant in a personal action by an attorney, and not by guardian; the coverture of either party at the commencement of the suit when her husband is not joined with her. Bouvier's Dictionary, [Vol. II.] 664, and the authorities there cited. Again, in Pickett's. Heirs v. Legerwood, 7 Pet. [32 U. S.] 148, it is said: "The cases for error coram nobis are enumerated without any material variation in all the books of practice, and rest on the authority of the sages and the fathers of the law. I will refer to the pages of Archbold for the following enumerations: "Error in the process or through default of the clerk; error in fact, as where the defendant, being under age, sued by attorney in any other action but ejectment; that either plaintiff or defendant was a married woman at the commencement of the suit, or died before verdict or interlocutory judgment, and. the like." In the case of Dows v. Harper, 6 Ohio, 520, it is said: "The supreme court being our highest judicial tribunal, no other court can examine its proceedings, and if the writ of error coram nobis resident is refused in our practice, wrongs resulting from the errors in fact of this court would remain without redress. The supreme court of New York has adopted the like practice. [Dewitt v. Post,] 11 Johns. 460." In this case the error in fact assigned was the death of Payne, one of the plaintiffs, before judgment; and the writ was allowed. In Brock. 162, [Strode v. The Stafford Justices, Case No. 13,537,] Chief Justice Marshall, in a case where the defendant died before judgment, in the circuit court of the United States, in the district of Virginia, after some fourteen years had elapsed, allowed a writ of error coram nobis, to reverse the judgment, on the petition of defendant's. administrator, for this alleged error in fact; and on the hearing reversed the judgment for that error. In Harris v. Hardeman, 14 How. [55 U. S.] 337, it was decided, that the circuit court, on motion, may set aside a judgment of a former term, on default of a defendant who had no notice of the action, holding the judgment merely void, and that the court had power summarily to declare it inoperative and stop proceedings under it. These authorities, it seems to me, clearly show that errors in fact can be reviewed on

writ of error coram nobis; and that among the errors of fact against which relief will be granted, is coverture of the defendant at the time of judgment.

Can the same thing be effected by a motion for that purpose, supported by affidavits? In 7 Pet. [32 U. S.] 148, already referred to, the supreme court say: "It cannot be questioned that the appropriate use of the writ of error, coram nobis, is to enable a court to correct its own errors; those errors which precede the judgment. In practice, the same end is now generally attained by motion, sustained, if the case require it, by affidavit." It will be remembered that in this case the court enumerated the errors in fact for which error coram nobis would lie, and among them that the defendant was a married woman, etc. In 14 How. [55 U. S.] 346, referred to above, the court say, in relation to the practice of the court: "It is believed to be the settled modern practice, that in all instances in which irregularities could formerly be corrected upon a writ of error coram nobis, or audita querela, the same object may be effected by motion to the court as a mode more simple, more expeditious and less fruitful of difficulty and expense." In this case, the court also say: "In this case the cause was still under the control and correction of the court for the enforcement of its judgment, and the supervision of its own process; and in the exercise of this function, it was competent for it to look back upon the entire progress of the case up to the writ and indorsements thereon, under the rule already stated as applicable to judgments by default, and to correct any irregularities which might be detected." These cases in the federal courts seem to settle that errors in fact may be reached as well by motion as by writ of error coram nobis.

Let us now examine whether a personal judgment can be sustained against a married woman. There is no claim that this judgment is anything but a personal judgment, although it is attempted under it to reach defendant's individual property to satisfy it. This is important as bearing upon the point raised by counsel for the plaintiffs, that a judgment by default should not be set aside unless a good defense is made out for the defendant, as well as with reference to the validity of the judgment rendered against the defendant, then being a married woman. In Swan's Practice, (page 111,) in a note, it is said: "A married woman is not, in general, competent to enter into contracts so as to render her liable to a personal decree or judgment." In Watkins v. Abrahams, 24 N. Y. 76, it is said: "I do not understand that a personal judgment can be entered against a femme covert by confession. There are good reasons why this cannot be done. In the first place, the common law courts in England and this country do not allow a judgment in personam to be given against a femme covert. It has been so long and well

settled that such a judgment could not be rendered against her, that it has been held erroneous, and such judgments invariably have been set aside on motion." In the case of Swayne v. Lyon, 67 Pa. St. 436, the court say: "An erroneous judgment upon a bad declaration collaterally may be a valid judgment—the declaration showing no legal cause of action whatever. But I apprehend that cannot be as against a married woman. Every judgment against her which does not show on its face her liability, is a void judgment. This is the principle of Caldwell v. Walters, 6 Harris, [18 Pa. St.] 79." In Griffith v. Clarke, 18 Md. 457, it is decided that "a promissory note signed by a femme covert cannot be enforced against her by any proceeding at law. A judgment by default against her, when sued at law, is a nullity." In Morse v. Toppan, 3 Gray, 411, a judgment was rendered against the defendant, a married woman, by default. In a suit on the judgment afterward brought, Chief Justice Parsons said: "The fact that the defendant was a married woman when the judgment was rendered against her, would alone be a good bar to this action. It would be the same as if she had entered into an obligation by bond at the same time, to which she might have pleaded non est factum. A judgment is in the nature of a contract—it is a specialty, and creates a debt, and, to have that effect, it must be taken against one capable of contracting a debt." In Kerr on Frauds, (page 148,) it is stated: "At law, a married woman is under an absolute incapacity to bind herself by any agreement. Her separate existence is not contemplated, but is merged by the coverture in that of her husband. But in equity, the case is wholly different. Her separate existence, both as regards her liabilities and her rights, is acknowledged in equity to the extent of the property she enjoys for her separate use. In respect to such property, she is capable of disposition and doing other acts as if she were a femme sole." In the case of Phillips v. Graves, 20 Ohio St. 371, the supreme court of Ohio review fully the rights and liabilities of married women at common law, as well as under our statutes. The suit was brought against the wife, joining her husband therein, upon a written contract signed by the wife alone for the purchase of a piano, and the petition alleged and set forth that she had separate property, and intended by the contract to charge that for the payment of the piano so purchased for her separate use. It was a proceeding in equity. In delivering the opinion, the court say: "Thus, a strange anomaly exists in English and American jurisprudence. Courts of law and courts of equity co-exist in the same realm; the former merging the legal existence of the wife in the husband; the latter recognizing her separate existence; the former declaring her incapable of acquiring, holding, or disposing of property; the latter recognizing her ability to ac-

quire, control, and dispose of her estate; the former denying her capacity to contract, or to sue or to be sued; the latter enforcing her agreement by granting relief both for and against her." Again: "While the judge declares her contracts absolutely void, the chancellor proceeds in rem, and charges her separate estate as equity and good conscience may require." In reference to our statutes, "in relation to the rights and liabilities of married women," the court further say: "These statutes do not, nor were they intended to, abridge the powers, or restrain or limit the jurisdiction of courts of equity in relation to the separate estates of married women; but, on the other hand, they do enlarge the jurisdiction of the chancellor, in so far as the general property of married women is charged, by the force of these statutes, to separate property. The legislative intention was to change the legal status of married women, and declare their legal rights and liabilities." This case also settles that the proper remedy to reach the separate property of married women for their liabilities is by proceedings in equity. It is claimed by the plaintiffs that under the Ohio statutes, in force at the commencement of this suit, a married woman was liable to be sued for her contracts, the same as if femme sole; and I am cited to the second section of the act "concerning the rights and liabilities of married women," as conferring the right to sue and be sued. This section provides that under certain circumstances, on application to the court of common pleas, the court may, by an order or judgment, invest her with that power. The declaration in this case does not aver that any such proceedings were had. In the absence of such averment, the court cannot presume such proceedings. To give jurisdiction against a married woman in a suit at law, her liability to be such must appear in the proceedings affirmatively, and will not be inferred. I have examined the authorities cited by counsel for the plaintiffs, and find that they do not materially conflict with those bearing upon the questions involved in this case already alluded to. Most of them are upon the point that judgment will not be disturbed on motion at a subsequent term of the court. But they are in cases where service was properly made, and no disabilities of the defendants alleged as a ground for the motion. On a careful review of the authorities, giving them such examination as seemed to be necessary to fully understand the principles decided by them, I have arrived at the following conclusions:

1st—That the coverture of the defendant at the commencement of this suit, and rendition of judgment herein, is a question of fact that might be remedied by writ of error coram nobis, and same reversed on such writ.

2d—That the same end can be attained by a motion supported by affidavits, at any time before the satisfaction of the judgment, and during existence of the coverture.

3d—The defendant, Maria E. Johnson, on the showing made on the motion, is entitled to have the execution issued upon the judgment set aside, and also the judgment rendered against her on default set aside, and be let in to defend the action; and I direct the order to be accordingly entered.